FILED
2020 May-06  PM 03:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| LACY WOODS, *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> QUICKEN LOANS, INC., a corporation, <br><br> Defendant. | Case No._____ <br><br> **CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, Lacy Woods ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her Class Action Complaint against Defendant, Quicken Loans, Inc. ("Quicken"), alleges the following based upon personal knowledge as to herself and her own actions, and, as to all other matters, respectfully alleges, upon information and belief and investigation of her counsel, as follows:

## NATURE OF THE ACTION

1.     This case involves Defendant's use of dishonest marketing practices in order to gain access to consumers' cellular phone numbers for purposes of placing telemarketing text messages, *en masse*, to those consumers for the benefit of Defendant.  As described more fully below, Defendant utilizes a bait-and-switch website that solicits consumers to provide their personal information in exchange for

the illusory promise of a loan in the amount of $100,000. After consumers unwittingly provide their personal information, however, they are not provided with any loan terms. Instead, they are bombarded with telemarketing text messages advertising Defendant's products sent in plain violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

2.    Plaintiff now brings this action for damages and other legal and equitable remedies, resulting from the conduct of Defendant in negligently, knowingly, and/or willfully placing telemarketing calls to Plaintiff's and other class members' phone numbers assigned to a cellular telephone service without their express written consent in violation of the TCPA.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, given Defendant's alleged violations of a federal statute. This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA") 28 U.S.C. §§ 1332(d)(2) and (d)(6), because there is diversity of citizenship and the claims of individual class members, in the aggregate, exceed the jurisdictional minimum of $5,000,000, exclusive of interest and costs.

4.    The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227, *et seq.*

5.    The Court has personal jurisdiction over Defendant because a portion

of the conduct at issue in this case occurred, among other locations, in Michigan and because Defendant's headquarters are located here.

6.    Venue is proper in the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this District thereby establishing sufficient contacts to subject it to personal jurisdiction.

## PARTIES

7.    Plaintiff Lacy Woods is a citizen of the State of Alabama residing in the City of Somerville, AL, and is a member of the Class defined herein.

8.    Defendant Quicken Loans, Inc. is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).  Defendant is, and at all times mentioned herein was, a Michigan mortgage lending corporation with its principal place of business in Detroit, Michigan.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

9.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

10.    Section 227(c) of the TCPA and the related regulations protect the privacy of residential telephone subscribers, which includes cell phone subscribers, and allows consumers to register their numbers on the National Do Not Call registry.

*See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2) ("No person or entity shall initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the [NDNC list] ....").

11.    Under 47 U.S.C. § 227(c) and the related regulations, it is a violation of the TCPA for parties to make more than one call within a twelve-month period to a number listed on a do-not-call registry provided for by the Federal Communications Commission ("FCC") without the residential telephone subscriber's prior express written consent. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2); 47 C.F.R. § 64.1200(e).

12.    The FCC has interpreted "calls" to include text messages to consumers' cellular phones.  *See, e.g., Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).

13.    To express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates."  *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

14.    The TCPA regulations promulgated by the FCC define "telemarketing"

as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

15.    "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'"  *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

16.    "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."  *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

17.    The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003).  This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the

call *or in the future*. *Id.*

18.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

19.     As held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## FACTUAL ALLEGATIONS

### *Neither Defendant Nor The "100KSurveyToday.com" Website Obtains Prior Express Written Consent from Consumers to Place Telemarketing Calls*

20.     Defendant advertises itself as a mortgage lending company that relies on wholesale funding to make its loans and uses online applications rather than a branch system.

21.     Defendant closed more than $400 billion of mortgage volume across all 50 states from 2013 through 2017.

22.     One of the methods in which Defendant generates "leads"—i.e.,

consumers who may be interested in purchasing Defendant's services and/or products— is through the utilization of aggressive Internet marketing.

23.    Defendant obtains consumer contact information through various websites that prey on consumers, frequently with low-incomes, by making the illusory offer of a cash loan in exchange for completing a survey.

24.    One of the websites that Defendant obtains consumer contact information from is www.100KSurveyToday.com (the "Website").   The actual owner/operator of the web site is in no way clear to the consumer.

25.    As indicated in the screenshot below, when a consumer visits the Website, the consumer is enticed to fill out a survey about what the consumer would do with a hypothetical $100,000 loan:



26.    After responding to a series of questions, the consumer is then transferred to another webpage that requires the consumer to provide their personal information, including their phone number, in order to purportedly see what kind of loan he or she is eligible for:



27.     However, after the consumer fills out the survey form and then clicks "See my results!," the consumer is not presented with any loan terms—the sole reason the consumer filled out the survey.

28.     Instead, the consumer is subsequently bombarded with telemarketing text messages from third party companies such as Defendant advertising its services.

29.     An examination into the Website reveals that, on the webpage displaying the survey form, the following statement is buried at the bottom of the page far **beneath** the "See my results!" button in barely legible Lilliputian font:

> By clicking "See My Results", you are providing express written consent to the Terms of Service and Privacy Policy, to share your information with RateMarketplace, up to 5 lenders with whom you have been matched and/or other business partners and consent (not required as a condition to purchase a good/service) for them to contact you through automated means (e.g. autodialing, text and pre-recorded messaging) via telephone, mobile device (including SMS and MMS) and/or email, even if it is a cellular phone number or other service for which the called person(s) could be charged for such call and even if your telephone number is currently listed on any state, federal or corporate Do Not Call registry. You may opt-out from SMS or Text messages at any time by replying STOP. As an alternative, you may contact us by email at customercare@ratemarketplace.com.

30.     As demonstrated in the screen shot image provided in Paragraph 26 of the Complaint, it is not at all clear to the consumer that he or she will receive telemarketing text messages by merely clicking the "See my results" button.

31.     As further shown in Paragraph 26 of the Complaint, the survey form is set up in such a manner that the consumer does not receive "clear and conspicuous disclosure" that by filling out the form and clicking "See my results!" the consumer is purportedly giving "prior express written consent" to receive telemarketing text messages to his or her cellular phone.    That is because the statement is inconspicuously hidden in Lilliputian font at the bottom of the webpage beneath the

"See my results!" button.

32.    The only way the consumer could conceivably discover the purported consent language is if the consumer scrolls all the way to the bottom of the webpage and closely examines the "fine print" before clicking "See my results!".

33.    The consumer further has no reason to suspect that he or she is agreeing to be contacted via telemarketing text messages because the webpage displaying the survey form does not contain any clear and conspicuous text referencing terms of agreements, nor does it instruct users that they are assenting to agreements by requiring, for example, the consumer to "check a box" or click "I Agree".  Instead, the webpage merely has a button that states "See my results!"

34.    Finally, the consumer has no reason to suspect he or she is agreeing to be contacted via telemarketing text messages because even if they had somehow conceivably found the Lilliputian language hidden at the bottom of the webpage before clicking the "See my results!" button, the Lilliputian language makes no mention of text messages being placed for *telemarketing* purposes.

35.    Thus, consumers, including Plaintiff and other Class members, do not receive proper notice of the purported consent language, which means that no consumer who filled out the survey form provided their consent to receive telemarketing text messages from Defendant.

***Plaintiff Woods' Experience with the Website***

36.    In or around July of 2019, Plaintiff Woods was lured into visiting the Website because she was interested in receiving loan terms for the $100,000 loan offer advertised on the Website.

37.    Plaintiff Woods proceeded to fill out the personal information fields, including her phone number.  Plaintiff Woods entered her cell phone number and then clicked the "See my results" button in anticipation of receiving her loan terms for the $100,000 offer advertised.

38.    However, after clicking on the "See my results!" button, Plaintiff Woods did not receive the promised loan offer advertised on the Website.

39.    Instead, she subsequently received multiple telemarketing text messages from Defendant sent from SMS Code 26293, including the following messages:



40.     At no point in time did Plaintiff provide Defendant with her express consent to send telemarketing text messages to her cellular phone.

41.     Plaintiff is the subscriber and sole user of the -5629 cellular phone number at issue and is financially responsible for phone service to the number.

42.     Plaintiff has been registered with the national do-not-call registry since approximately 2013.

43.     Defendant's unsolicited telemarketing text messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.  Defendant's telemarketing text messages also inconvenienced Plaintiff and caused disruption to her daily life.  *See Patriotic Veterans, Inc. v. Zoeller*, No. 16-2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious.").

44.     Defendant's unsolicited text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that she wasted at least 3-5 minutes reviewing all of Defendant's unwanted messages and eventually replying "Stop" to end the communications.  Each time, Plaintiff had to stop what she was doing to retrieve her phone to review the message.

45.     Next, Plaintiff wasted approximately 60 minutes locating and retaining counsel for this case in order to stop Defendant's unwanted calls.

46.    In all, Defendant's violations of the TCPA caused Plaintiff to waste significant time in addressing and attempting to stop Defendant's solicitations.

### *Defendant Harmed Plaintiff in a Manner Identical*
### *To the Manner in Which Defendant Harmed the Class*

47.    Plaintiff is in the same Class as all other consumers who utilized the Website during the relevant time period.  Plaintiff and the Class clicked "See my results!" and then subsequently received telemarketing text messages and none provided their prior express written consent.

## CLASS ACTION ALLEGATIONS

48.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

49.    Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.

50.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **All persons within the United States who filled out and submitted a quote form on the website www.100KSurveyToday.com and then (1) were sent a text message by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.**

Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is a member of, the Class.

51.    Excluded from the Class is the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, and their legal representative, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiff's counsel and their staff members.

52.    Plaintiff reserves the right to amend the Class definition or add a Class if further information and discovery indicate that the Class definition should be narrowed, expanded, or otherwise modified.

53.    Plaintiff does not know the exact number of members of the Class, but Plaintiff reasonably believes the Class members number, at minimum, in the thousands.

54.    Plaintiff and all members of the Class have been harmed by the acts of Defendant.

55.    This Class Action Complaint seeks injunctive relief and money damages.

56.    The joinder of all Class Members is impracticable due to the size and relatively modest value of each claim.

57.    Additionally, the disposition of the claims in a class action will provide

substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

58.    Further, the Class can be identified easily through records maintained by Defendant and/or its marketing agents.

59.    There are well-defined, nearly identical, questions of law and fact affecting all parties.

60.    The questions of law and fact, referred to above, involving the Class claims predominate over questions which may affect individual Class members.

61.    Such common questions of law and fact include, but are not limited to, the following:

    a. Whether Defendant gave proper notice to consumers that filled out a survey form that Defendant intended to send telemarketing text messages to the phone numbers provided by Class members;

    b. Whether Defendant can meet its burden of showing it obtained prior express written consent to send such messages;

    c. Whether Defendant's conduct violated the TCPA;

    d. Whether Defendant's conduct was knowing and/or willful;

    e. Whether Defendant is liable for statutory damages; and

    f. Whether Defendant should be enjoined from engaging in such conduct in the future.

62.    As a person who received more than one telemarketing text message to her cellular phone within a 12-month period when her cell phone number was registered on the National Do Not Call Registry, without providing her prior express written consent to Defendant within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member who also received such text messages.

63.    Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.

64.    Plaintiff has no interests which are antagonistic to any member of the Class.

65.    Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

66.    A class action is the superior method for the fair and efficient adjudication of this controversy.

67.    Class wide relief is essential to compel Defendant to comply with the TCPA.

68.    The interest of the Class members in individually pursuing claims against the Defendant is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter Defendant from engaging in the same behavior in the future.

18

69.    Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the Class members, by definition, uniformly did not provide the prior express consent required under the statute to authorize such messages to their cellular telephones.

70.    Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

71.    Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### COUNT I

### Violation of the TCPA, 47 U.S.C. § 227

### (On Behalf of Plaintiff and the Class)

72.    Plaintiff repeats and realleges the paragraphs 1 through 71 of this Complaint and incorporates them by reference herein.

73.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

74.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[1]

75.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

76.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

77.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Class members who registered their respective telephone numbers on the National

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

78.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

79.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that the Court grant Plaintiff and all Class members the following relief against the Defendant:

A.    Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

B.    As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C.  As a result of Defendant's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member $500 in statutory damages for each and every violation of the TCPA;

D.  An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

E.  An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiffs are proper representatives of the Class, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class; and

F.  Such other relief as the Court deems just and proper.

Dated: May 6, 2020

Respectfully submitted,

*/s/ Taylor C. Bartlett*
**HENINGER GARRISON DAVIS, LLC**
Taylor C. Bartlett (ASB-2365-A51B)
taylor@hgdlawfirm.com
W. Lewis Garrison, Jr.
wlgarrison@hgdlawfirm.com
2224 First Avenue North
Birmingham, AL 35203
Telephone: 205.326.3336
Facsimile: 205-380-8085

**MASON LIETZ & KLINGER, LLP**
Gary M. Klinger
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (312) 283-3814
E: gklinger@masonllp.com

**SIRI & GLIMSTAD LLP**
Aaron Siri (pro hac motion to be filed)
Mason A. Barney (pro hac motion to be filed)
200 Park Avenue, Seventeenth Floor
New York, New York 10166
Tel: (212) 532-1091
E: aaron@sirillp.com